UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON RAYMOND YETTAW #365357,

    Plaintiff,

v.

JASON MORGAN, et al.,

    Defendants.

_____/

Hon. Sally J. Berens

Case No. 1:24-cv-334

**OPINION**

Plaintiff Jason Yettaw, a state prisoner confined with the Michigan Department of Corrections (MDOC), has sued Sgt. Jason Morgan and Corrections Officers (CO) Logan McNeese, Armando Ortiz, and Kyle Halstead pursuant to 42 U.S.C. § 1983, alleging that they violated his rights under the Eighth Amendment by use of excessive force on Yettaw. Presently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 27.) The motion is fully briefed and ready for decision. For the following reasons, the Court will **GRANT** the motion and dismiss Yettaw's claims against Defendants with prejudice.[1] In addition, the Court will dismiss the claim against Unknown Party #1 without prejudice for failure to timely effect service.

**I. Background**

On August 29, 2022, Yettaw was incarcerated at the Ionia Correctional Facility (ICF) in 3-Block as part of the START mental health program. Although Yettaw was not currently on

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the undersigned conducting all proceedings in this case, including entry of a final judgment and all post-judgment matters. (ECF Nos. 4 and 17.)

sanction status, he had not been allowed to use the JPay machine or phones for over two weeks and wanted to speak to someone about the issue. (ECF No. 1 at PageID.3–4.) So, after dinner, Yettaw decided to take his cell food slot "hostage" by sticking his arm out of it. He also knocked over food trays on a nearby cart. Sgt. Morgan responded to Yettaw's cell and spoke to Yettaw about removing his arm from the food slot, but Yettaw refused to remove it. (ECF No. 28-5 at PageID.160–61.) When Sgt. Morgan told Yettaw that he would be moved to Unit 2, Yettaw responded, "Well, you have to carry me then." (ECF No. 28-2 at PageID.137.) Sgt. Morgan walked away, and shortly thereafter, Warden Davids authorized the use of force, chemical agents, pepper ball launcher, and "breacher bar" to remove Yettaw from his cell and place him in Unit 2. (*Id.* at PageID.161; ECF No. 28-7 at PageID.167; ECF No. 28-9 at PageID.201.)

A response team comprised of Sgt. Morgan and COs Keough, Hancock, Kaliszewski, H. Otiz (another corrections officer with the same surname as named Defendant Ortiz), Halstead, and Randall went to Yettaw's cell. (ECF No. 28-7 at PageID.167.) Sgt. Morgan ordered Yettaw to remove his arm from the food slot and back up to the cell door to allow custody staff to apply restraints. Sgt. Morgan told Yettaw that he would be shot with a pepper ball launcher if he did not pull his arm back into his cell, but Yettaw refused to comply.[2] (ECF No. 28-2 at PageID.137–38; ECF No. 28-5 at PageID.161.) Sgt. Morgan then used the pepper ball launcher to fire three pepper balls into the food slot, which hit Yettaw in his arm, but Yettaw kept his arm in his food slot. (ECF No. 28-2 at PageID.140.) Sgt. Morgan gave Yettaw another order to remove his arm and back up to the cell door, but Yettaw did not comply. Sgt. Morgan therefore administered another three-round burst with the pepper ball launcher but was unsuccessful in gaining Yettaw's compliance.

---

[2] Yettaw testified that a pepper ball launcher is similar to a paint ball gun but shoots balls filled with pepper spray powder instead of paint. (ECF No. 28-2 at PageID.138.)

2

(ECF No. 28-5 at PageID.162.) By this time, Yettaw had his mattress between his body and the food slot to keep his arm in the food slot and to prevent the response team from moving his arm and accessing the cell. Yettaw was also holding on to the bottom of the food slot to keep his arm from being moved. (ECF No. 28-2 at PageID.141.)

The response team left the area for a brief time and returned with a breacher bar to use to push Yettaw's arm and mattress out of the food slot. Yettaw was again ordered to pull his arm back into his cell, but he refused. (*Id.* at PageID.142.) COs Hancock and Kaliszewski then used the breacher bar to push the mattress and Yettaw's arm away from the food slot. (ECF No. 28-5 at PageID.161; ECF No. 28-7 at PageID.167.) Sgt. Morgan released a chemical agent into Yettaw's cell, and he removed his arm from the food slot. (ECF No. 28-5 at PageID.162.) Sgt. Morgan ordered Yettaw to show his hands and H. Ortiz told him to "cuff up." (ECF No. 1 at PageID.5.) Yettaw complied with the order. CO H. Ortiz applied handcuffs, and CO Halstead applied ankle cuffs to Yettaw. (ECF No. 28-2 at PageID.150; ECF No. 28-5 at PageID.162.) COs Hancock and Kaliszewski then walked Yettaw from his cell to the Unit 2 A-Wing shower module backward and bent over at the waist with his arms behind him. (ECF No. 1 at PageID.5–6.)

After Yettaw was moved, Nurse Johnson evaluated Yettaw and noted that he had three "nickel sized bruises and a small amount of bleeding" on his right arm and a "skin tear" to his right hand with a small amount of bleeding. (ECF No. 28-8 at PageID.198.) Nurse Johnson gave Yettaw band-aids to cover the areas of bleeding.[3] (*Id.*) Yettaw testified that he is not receiving ongoing treatment for these injuries, and they are just scars or marks that no longer bother him. (ECF No. 28-2 at PageID.148.)

---

[3] Yettaw was offered, but refused, a shower to wash the chemical irritant off his body. (ECF 28-7 at PageID.173.)

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. Discussion

### A.   Lack of Personal Involvement—Defendants McNees and Ortiz

Defendants McNeese and Ortiz contend that they are entitled to summary judgment because they were not personally involved in the incident at issue. It is well established that a defendant cannot be held liable under Section 1983 absent a showing that they personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. *See, e.g., Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982). "Plaintiff must state a plausible constitutional violation against each individual defendant—the collective acts of defendants cannot be ascribed to each individual defendant." *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012). In short, a "plaintiff must plead and prove that the defendant was personally involved in the activity that forms the basis of the complaint." *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272 (W.D. Mich. 1991); *see also Heyne v. Metropolitan Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials

4

arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (internal quotation marks omitted)). At the summary judgment stage, a plaintiff must present evidence of the defendant's involvement in the alleged constitutional deprivation. *Bennett v. Schroeder*, 99 F. App'x 707, 713 (6th Cir. 2004); *see also Lentz v. Anderson*, 888 F. Supp. 847, 850 (N.D. Ohio 1995) ("Because there is no evidence that Governor Voinovich, Department of Rehabilitation and Correction Director Wilkinson, OPI Director Anderson, and OPI Manager Mustard were personally involved in the prison's decision-making process which led to plaintiff's allegations of cruel and unusual punishment, they will be dismissed from any § 1983 liability.").

Defendants McNeese and Ortiz support their claims of non-involvement with the response team during the August 29, 2022 incident with their affidavits. Defendant McNeese states that, while he was working as a corrections officer on August 29, 2022, he was not part of the response team and, in fact, was not even present at ICF, as he was "conducing an off-facility hospital run and was away from ICF for the entirety of my shift." (ECF No. 28-3 at PageID.154.) Defendant A. Ortiz concedes that he was present at ICF on August 29, 2022, but states that he was not part of the response team. Rather, he notes that, while he was performing his CO duties that day picking up food trays in Unit 3, Yettaw put his arm out of his food slot and said, "I ain't giving you back this fucking tray, come any closer I hit you with it bitch." (ECF No. 28-4 at PageID.157–58.) Defendant Ortiz states that Yettaw then grabbed trays on the food cart and knocked them over in his direction. (*Id.* at PageID.158.) Ortiz wrote Yettaw a Class I misconduct later that day for "Threatening Behavior." (*Id.*)

5

Yettaw fails to rebut these affidavits with admissible evidence or explain why they do not support Defendants McNeese and Ortiz's requests for summary judgment. Accordingly, the claims against Defendants McNeese and Ortiz are properly dismissed for lack of personal involvement.

### B.     Eighth Amendment Claim

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The Supreme Court has held that "whenever guards use force to keep order," the standards set forth in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7. In determining whether the use of force is wanton and unnecessary, a court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any effort made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321). In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court affirmed that the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause

harm.'" *Id.* at 37 (quoting *Hudson*, 503 U.S. at 7). The Court noted that the degree of injury is still relevant to the inquiry, as it may shed some light on the amount of force used, but "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 38 (quoting *Hudson*, 503 U.S. at 9). Certain uses of force, however, lie outside the scope of the Eighth Amendment's protections. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley*, 475 U.S. at 327).

An Eighth Amendment claim has both an objective and a subjective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). The objective component requires the "pain inflicted to be 'sufficiently serious'" to offend "contemporary standards of decency." *Id.* at 580 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Hudson*, 503 U.S. at 8). The subjective component asks "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson*, 503 U.S. at 7).

Defendants Sgt. Morgan and CO Halstead contend that Yettaw's excessive force claim fails on both the objective and subjective elements. Turning first to Plaintiff's claim against CO Halstead, the Court has no difficulty concluding that Yettaw fails to satisfy either element of the claim. Although CO Halstead was part of the response team, his only involvement was applying leg restraints to Yettaw. (ECF No. 29-1.) Yettaw has not alleged that application of these restraints constituted excessive force. In fact, CO Halstead's application of the leg restraints involved no more than a *de minimis* application of force. *See Johnson v. Sootsman*, 79 F.4th 608, 617 (6th Cir.

7

2023) (noting that the Sixth Circuit has previously found an officer's application of handcuffs that were too tight involved the use of *de minimis* force) (citing *Jones v. Johnson*, No. 20-1331, 2021 WL 1578185, at *2 (6th Cir. Apr. 21, 2021) (order)).[4] The claim against Defendant Halstead likewise fails on the subjective component, as Yettaw presents no evidence that Halstead acted "maliciously and sadistically" to inflict pain in applying restraints. *Hudson*, 503 U.S. at 7.

As for Sgt. Morgan, the Court finds it unnecessary to address the objective component because the claim is easily resolved on the subjective component alone. As Yettaw concedes, he stuck his arm in his food slot and refused to remove it despite multiple orders to do so. (ECF No. 28-2 at PageID.137–40.) Yettaw also acknowledges that his disregard of those orders violated MDOC Policy. (*Id.* at PageID.146.) Moreover, the video footage of the incident, which includes sound, indicates that Yettaw aggressively refused to comply, at one point stating, "Fuck you, bitch," in response to an order to remove his arm. Sgt. Morgan thus had a legitimate penological justification for the use of force to compel Yettaw's compliance and restore order. *See Crippin v. Strickland*, No. 1:23-cv-1277, 2024 WL 1298047, at *5 (W.D. Mich. Mar. 27, 2024) (prisoner's act of holding his food slot hostage provided a legitimate justification for use of force). Sgt. Morgan used the pepper ball launcher by deploying two separate three-round bursts on Yettaw, to no effect. Nothing about this use suggests that it was malicious or sadistic in any respect.

Next, the minor injuries that Yettaw suffered from the pepper ball launcher also indicate that Sgt. Morgan did not act with a culpable state of mind. "[A]lthough the Eighth Amendment does not require a prisoner to suffer a 'serious injury,' the 'absence' of such an injury goes a long

---

[4] As Defendants note, although Yettaw did not sue CO H. Ortiz, who was a part of the response team, any claim against him would have failed because his only role in dealing with Yettaw was applying handcuffs once Yettaw finally complied with the officers' commands and backed up to his cell door to be handcuffed.

way to disprove any claim that an officer used force with the required intent to harm." *Johnson*, 79 F.4th at 618–19 (citing *Hudson*, 503 U.S. at 7–8). As set forth above, following the incident, Nurse Johnson noted that Yettaw had three small bruises and a small amount of bleeding on his arm from being hit with the pepper balls and gave him band-aids to use on his arms.[5] (ECF No. 28-8 at PageID.198.) Moreover, Yettaw declined to make a statement regarding his injuries. (*Id.*) The absence of any significant injury thus undercuts any suggestion that Sgt. Morgan acted with malevolent intent. *Id.* (noting that force causing "only some tenderness, bruising, and slight swelling" or "minor lacerations and cuts" is not suggestive of an intent to harm).

Last, the use of the pepper ball launcher was proportional to the need for some force in response to Yettaw's refusal to comply with orders to remove his hand from his food slot. Sgt. Morgan used the pepper ball launcher only after affording Yettaw opportunities to comply and warning that he would be shot with pepper balls unless he removed his arm. Moreover, he tempered the severity of the force by discontinuing its use after discharging three rounds two times when it proved ineffective in compelling Yettaw to remove his arm from the slot.

Yettaw argues that use of the pepper ball launcher was excessive because Defendants' objective was simply to remove him from his cell and place him in another cell.[6] He contends that Sgt. Morgan could have used other, less damaging options to move him, such as gas or a taser.

---

[5] Yettaw testified that there were six dime-sized circles on his arm, but two of them have faded away. (EF No. 28-2 at PageID.148.) The discrepancy between Nurse Johnson's report and Yettaw's testimony is immaterial as his injuries were minor regardless of the number of bruises or spots.

[6] Yettaw indicates in his response that he was denied an opportunity to change clothes after being taken to the shower. (ECF No. No. 34 at PageID.252.) The complaint does not include a claim of being denied new clothing. Rather, its focus is on the injuries Yettaw claims to have suffered from excessive force. In any event, Yettaw has not presented admissible evidence, such as an affidavit, to support such claim. The Court notes that the critical incident report states that Yettaw refused both a decontamination shower and clean clothes. (ECF No. 28-7 at PageID.167.)

(ECF No. 34 at PageID.253–254.) Yettaw argues that instead, Sgt. Morgan decided to use the weapon "that would cause the most physical damage, pain, and suffering . . . ." (*Id.* at PageID.253.) This argument lacks merit because, while it is undisputed that the eventual goal was to move Yettaw to a different cell, the response team first needed to have Yettaw remove his arm from the food slot. Furthermore, Yettaw presents no admissible evidence to support his claim that the pepper ball launcher would cause more physical damage and pain than other available means of force or that Sgt. Morgan chose to use the pepper ball launcher with a malicious or sadistic motive.

Even if other force alternatives were available that *may have* caused less harm, the applicable standard is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7. Here, as set forth above, the evidence of record demonstrates that Sgt. Morgan used the pepper ball launcher in a good-faith effort to gain Yettaw's compliance, not for the very purpose of causing harm. Thus, the availability of other force alternatives is irrelevant to the analysis. *See Jones v. Slater*, No. 2:22-cv-10188, 2024 WL 4485575, at *5 (E.D. Mich. July 31, 2024), *report and recommendation adopted*, 2024 WL 4349176 (E.D. Mich. Sept. 30, 2024) ("The standard is not whether any less force could have accomplished defendants' legitimate goals."). In short, Yettaw fails to create a genuine issue of material fact as to whether Sgt. Morgan's use of the pepper ball launcher was excessive under the standards articulated in *Hudson* and *Whitley*.

Turning to use of the breacher bar, Sgt. Morgan was not involved in its application, but assuming that he may be held responsible for its use in a supervisory role, the Court also considers its use. For the reasons previously articulated with regard to the pepper ball launcher, Yettaw fails to show that use of the breacher bar amounted to an Eighth Amendment violation. That is, Yettaw's failure to comply with repeated orders demonstrated a need for force; the injury to Yettaw's hand

10

resulting from use of the breacher bar was minor and not serious, indicating a degree of force that was not excessive; and the response team used the breacher bar only after the pepper ball launcher proved ineffective. There is also no dispute that, before using the breacher bar, a response team member gave Yettaw an additional chance to comply by issuing him another order to remove his arm. The video evidence shows that the officers then used the breacher bar for its intended purpose—to push the mattress and Yettaw's arm out of the food slot in order to create an opening to place chemical agent into Yettaw's cell to subdue him. Contrary to Yettaw's allegation, the video does not show that the officers used the tool as a sledgehammer on his hand; in fact, the minor injury that Yettaw suffered to his hand refutes his allegation. In short, the evidence demonstrates that the response team used the minimum amount of force needed to gain control of Yettaw after he reused to comply with the officers' repeated commands. Yettaw thus fails to show that a reasonable jury could find that Sgt. Morgan or any other member of the response team "used force for no other reason than to inflict pain or injure him."[7] *Johnson*, 79 F.4th at 620 (citing *Whitley*, 475 U.S. at 319).[8]

---

[7] Because Yettaw fails to establish a constitutional violation, the Court finds it unnecessary to separately address Defendants' qualified immunity argument. *See Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) ("If either step [of the qualified immunity inquiry] is not satisfied, then qualified immunity shields the government officer from civil damages.").

[8] Defendants also raised the separate issues of whether Yettaw's official capacity claims should be dismissed on the basis of Eleventh Amendment immunity and whether Yettaw is entitled to injunctive relief. (ECF No. 28 at PageID.118–20.) Yettaw did not respond to these arguments. The official capacity claims for money damages are properly dismissed on Eleventh Amendment grounds. *See Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (noting that Eleventh Amendment immunity "applies to actions against state officials sued in their official capacity for money damages") (citing *Lapides v. Bd. of Regents*, 535 U.S. 613, 616, 623 (2002)). As for injunctive relief, Yettaw's failure to establish a constitutional violation precludes such relief.

### C. Unknown Defendant #1

Federal Rule of Civil Procedure 4(c) provides that "[a] summons must be served together with a copy of the complaint." The time frame within which service must be effected is set forth in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 90 days after the filing of the complaint, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." If the plaintiff demonstrates good cause for such failure, however, the court "must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

On July 17, 2024, the Court ordered that Yettaw's complaint be served. (ECF No. 9.) The Court's order expressly informed Yettaw that "the 90-day period for service set forth in Federal Rule of Civil Procedure 4(m) shall run, starting with the date of this order." (Id. at PageID.45.) In the more than 11 months since the order was issued, Yettaw has neither requested an extension of time to effect service on Unknown Party #1 nor requested the Court's assistance in identifying this individual. Considering Yettaw's lack of diligence, the Court will dismiss his claims against Unknown Party #1 without prejudice for failure to timely effect service.

### IV. Conclusion

For the reasons set forth above, the Court will **grant** Defendants' Motion for Summary Judgment (ECF No. 27) and dismiss Yettaw's complaint against Defendants Morgan, McNeese, Halstead, and Ortiz with prejudice. Yettaw's claim against Unknown Party #1 will be dismissed without prejudice.

A separate Order consistent with this Opinion will be entered.

Dated: July 1, 2025                              /s/ Sally J. Berens
                                                 SALLY J. BERENS
                                                 U.S. Magistrate Judge